Estate of Julius Bloch-Sulzberger, Paul Schrag and Dulcie Bloch-Sulzberger, Executors v. Commissioner.
Estate of Julius Bloch-Sulzberger v. Commissioner
Docket No. 10216.
United States Tax Court
1947 Tax Ct. Memo LEXIS 38; 6 T.C.M. (CCH) 1201; T.C.M. (RIA) 47304; November 12, 1947
Randolph E. Paul, Esq., and Louis Eisenstein, Esq., for the petitioners. Henry C. Clark, Esq., for the respondent. MURDOCK Memorandum Findings *39 of Fact and Opinion The Commissioner determined a deficiency of $73,162.70 in estate tax. The first question for decision is whether the decedent was a resident of the United States at the time of his death so that his estate was taxable under Part II, Subchapter A of Chapter 3, or whether he was not a resident within the meaning of that provision and, therefore, his estate was taxable under Part III. The other issue for decision is whether a transfer in trust to his daughters was made in contemplation of death. Findings of Fact The estate tax return was filed with the collector of internal revenue for the second district of New York. The decedent was born in Zurich, Switzerland, on July 17, 1883 and died there on September 19, 1941 of coronary thrombosis. He was survived by his wife, Dulcie, who was born in New York City on May 19, 1898, and by two daughters, Jacqueline and Ann Mary, who were 20 and 16 years of age at the date of his death. He lived and had his home in Zurich and never intended to make his home at any other place. He was a citizen of Switzerland all of his life. The decedent was domiciled in Zurich, Switzerland at all times material hereto. The Commissioner, *40 in determining the deficiency, added to the gross estate as shown on the return the value of a number of items of property situated outside the United States. The decedent executed an irrevocable trust for the benefit of his two daughters on July 27, 1940. He retained no interest in the trust property. He was not a trustee. He delivered $180,000 face amount of United States Treasury notes to the trustee on or about August 26, 1940. That property was situated in the United States at the time of the transfer and also at the time of the decedent's death. The corpus of the trust was valued for estate tax purposes at $168,033.50. The Commissioner included that amount in the gross estate "as the value of property transferred in contemplation of death." The transfer of the property was not made in contemplation of death. The stipulation of facts is incorporated herein by this reference. Opinion MURDOCK, Judge: Part II of Subchapter A of Chapter 3 of the Internal Revenue Code imposes a tax on estates of citizens and residents of the United States, while Part III imposes a tax upon the somewhat differently described estates of nonresidents not citizens of the United States. The first *41 question in this case is whether the decedent was a resident of the United States within the meaning of that phrase as used in section 810 of Part II or whether he was a nonresident not a citizen of the United States within the meaning of that phrase as used in section 860 of Part III. The respondent argues that the decedent was a resident and relies upon a number of statements which the decedent made, some under oath, in documents, such as applications for visas and reentry permits, and tax returns, in which, for the purpose of obtaining privileges which he enjoyed during the last 15 months or more of his life, he represented that he was a resident of the United States. The Commissioner says that the executors should not be allowed to repudiate those representations as not only false but deliberately untrue or to show that, in effect, the decedent would have been criminally liable for false statements in those documents. The problem here is not to determine whether the decedent may have perjured himself or, by false statements, may have obtained privileges to which he was not entitled. The real question in the case is one which the respondent does not fully recognize or adequately *42 discuss. It has been held that a resident for estate tax purposes, as the applicable regulations provide, is one who at the time of his death had his domicile in the United States. Regulations 105, section 81.5. , certiorari denied ; ; , affirmed ; . Thus, the real question in the first issue is - where was the decedent domiciled at the time of his death. No dispute as to the principles of law governing domicile appears. A man can have but one domicile at a time and he can not have a new domicile until his old one has been lost. The decedent's domicile of origin was Zurich, Switzerland. There is a presumption, which need not be indulged in here, that the old domicile continues where a change is alleged. The intention *43 of the person is extremely important. Domicile is the place which he regards as his home, the place where he intends to live. His old domicile continues until it appears that he intends to live there no longer but has an intention to make his home henceforth at some other place and to remain there indefinitely. ; ; He may have a residence at one place while retaining his domicile at another. "The domicile of origin is not changed even by long continued absence if there is any intention of returning, , aff'd. , even though intention be doubtful, . And mere residence alone is neither conclusive nor sufficient evidence of a change of domicile, ; ; ." . *44 The finding of fact that the decedent was domiciled in Zurich, Switzerland at all times material hereto decides this first issue. There is a great deal of evidence in the record to support that finding and there is also some evidence which tends to support the Commissioner's determination, but the irresistible weight of the evidence is in favor of the petitioners. The decedent, throughout his life, was a citizen of Switzerland. His birth, marriage, and death took place in Zurich. He lived all but about the last sixteen months of his life there where he had a substantial home, to the location and construction of which he and his wife had given much thought. He never parted with the property, but retained it exclusively as his home until the moment of his death. He never closed it or left it unattended. His business and his business interests were all in Zurich. He was the principal stockholder and executive head of a business established there by his grandfather. He continued his activities in that business until his death. He was interested in many charities and civic affairs in Zurich and he maintained his interest therein until his death. He was interested and active in sports *45 in Switzerland. He had many friends and entertained extensively in his home. In fact, all of his interests at all times material hereto were centered in Switzerland and he was happy and contented in his life there until disturbed by the war. The decedent, his wife, and their two daughters left Switzerland on May 20, 1940 to come to the United States. They were Jews. They feared that the Germans might invade Switzerland and prosecute Swiss Jews. The decedent left Switzerland most reluctantly. His wife, who was born in the United States, believed that they should come here for the safety of themselves and their children. She insisted that the decedent accompany her and she finally persuaded him to make the trip. He entered the United States on May 28, 1940, on a temporary visa, entitling him to stay six months. He had refused to apply for an immigration visa. The decedent and his family, while in the United States, lived most of the time at a hotel in New York City. The decedent at all times after leaving Switzerland wanted to return and intended to return to continue his interrupted life there just as soon as he could do so. His many letters are full of statements showing that he *46 was unhappy here, was ashamed that he had left Switzerland and had stayed here so long, and was impatient to return to Switzerland even though his wife and daughters would remain in the United States for their personal safety. This preyed on his mind to such an extent that he became ill and melancholy. His wife, his friends, and his medical advisers were constantly trying to overcome his constant desire to return to Switzerland. His wife reestablished her American citizenship shortly after arriving in this country. He stayed here beyond the period covered by his visitor's visa and he signed and swore to a number of documents in which he made statements to the effect that he intended to stay permanently in the United States or that it was his residence. Cf. He finally set off for Zurich by plane on September 9, 1941. Although he had a permit to return and a return trip ticket, nevertheless, he confided in his older daughter at the time of his departure that he did not intend to return. He was taken ill on the journey and died within a few hours after reaching Zurich. He never gave any indication, except in the sworn statements *47 above referred to, while he was in the United States, that he had any intention of giving up his home in Switzerland and of making a new home in this country. He had no office or business here. He never took an interest in activities in this country similar to those which had previously occupied his time and attention in Switzerland. He did not form any connections in the United States to compare in any way with those which he had established and had continued to maintain in Zurich. He always intended to return to Zurich. Zurich remained his domicile. The practical effect of this finding is that the Commissioner erred in including in the gross estate money which the decedent had on deposit with a bank in the United States, and the value of property situated outside the United States. The next decision for decision is whether the transfer of property in trust by the decedent for the benefit of his two daughters was made in contemplation of death. This issue is not complicated by any contention that the transfer came within any of the other provisions of section 811 (c), made applicable by section 862 (b). The respondent contends that the decedent well knew at the time of the transfer *48 that he was not a well man and he further contends that the decedent was contemplating suicide at that time. The record shows that the decedent was suffering from melancholic depression. It appears that this condition was due to his presence in the United States at a time when he thought he should be in Switzerland to attend to his business and to support his country. He was terribly unhappy and discontented as long as he remained in this country. Ostensibly, his return to Switzerland would have cured this condition. He mentioned "suicidal ideas" to his physician on one occasion in 1940. A finding of fact, based upon the present record, that he made the transfer because he intended to commit suicide would be highly improper and unjustified. The decedent had a number of ailments. However, none of them was very serious and it does not appear that any of them led him to make the transfer here in question. He had been a diabetic for a number of years but the disease was under control. He gave himself insulin treatments. His blood pressure was rather high for his age but the condition was of benign type and gave no indication of impairing his immediate state of health. His heart was somewhat *49 enlarged to compensate for the high blood pressure. He and his physicians knew about this condition but were not alarmed. He was active. He suffered no pain or discomfort as a result of his heart condition. He was 57 years of age at the time of the transfer. While there is some evidence from which a contemplation of death might be inferred in a general kind of a way, it is more than overcome by other evidence indicating the specific and impelling reasons which led the decedent to make the transfers in question. Those motives were to reduce his income taxes here and in Switzerland, to give his daughters some property of their own as they approached marriageable ages, to place some of his property out of the reach of possible Nazi pressure, and as a hedge against the possibility that his assets in this country would be subjected to restrictions as a result of the war. The evidence as a whole preponderates in favor of a finding that the transfer was not made in contemplation of death since the impelling or inducing motives for the transfer were ones connected with life. Decision will be entered under Rule 50.